James G. Yaeger Lee County Attorney
QUESTION:
1. May Lee County, pursuant to s. 138.12, F.S., expand the boundaries of the present county seat to include an area comprising the boundaries of another municipality within the county?
2. Does the prohibition against removal of a county seat in s. 138.10, F.S., affect a county's ability to expand its county seat under s. 138.12, F.S.
SUMMARY:
1. A county may expand its county seat beyond the municipal boundaries into an adjacent municipality pursuant to s. 138.12, F.S., but must otherwise comply with the provisions of Ch. 138, F.S., to move the county seat.
2. Section 138.10, F.S., limits the county's ability to change the location of the county seat and would not appear to affect the ability to expand the county seat; however, expansion of the county seat in order to build a new courthouse would appear to be limited by s. 138.10, F.S.
QUESTION ONE:
Section 138.12, F.S., provides:
 The board of county commissioners of any county may expand the geographical area of the county seat of its county beyond the corporate limits of the municipality named as the county seat by adopting a resolution to that effect at any regular or special meeting of the board. Such a resolution may be adopted only after the board has held not less than two public hearings on the proposal at intervals of not less than 10 or more than 20 days after notice of the proposal and such meetings has been published in a newspaper of general circulation in the county. However, nothing herein shall be deemed to extend the boundaries of the municipality in which the county seat was previously located or annex to such municipality the territory added to the county seat.
Thus, there is statutory authorization for the expansion of a county seat beyond the corporate limits of the municipality presently named as the county seat. There is no indication, however, whether the county seat may only be expanded into an unincorporated area of the county or may include the corporate limits of a neighboring municipality. Furthermore, a review of the legislative history of this statute yields no evidence that expansion of the county seat would be limited to certain geographical areas.
In AGO 75-117, this office considered whether a county seat could be relocated to an unincorporated area of the county. Finding no restriction on the location of the county seat other than that it be a "town, village, or city" and noting that there are county seats in Florida which are unincorporated, this office concluded that relocation of the county seat was not limited by Ch. 138, F.S., to incorporated municipalities within the county.[1]
In light of the absence of any restrictions in Ch. 138, F.S., on expanding the county seat to a specific geographic area, such as contiguous unincorporated lands, it would appear that the county seat could be expanded beyond the corporate limits of the present county seat into another municipality within the county.[2]
As indicated in s. 138.12, F.S., however, such expansion does not annex the property into the municipality which serves as the county seat, nor does it extend the boundaries of the municipality. Furthermore, expansion of the county seat into an adjacent municipality may not be used to circumvent the provisions in Ch. 138, F.S., for removal of the county seat to another municipality in the county.
QUESTION TWO:
Section 138.10, F.S., states:
The provisions of this chapter shall not apply to any county having constructed a new courthouse with the past 20 years, other than a county having constructed a courthouse of wood, in which the county seat is situated, in any town or city not located on any line of rail-road transportation.
This statutory provision has been judicially construed to mean that costs for moving the county seat may not be incurred until the county courthouse is twenty years old.[3]
Furthermore, this office in AGO 59-69, concluded that s. 138.10, F.S., might preclude moving the county seat, i.e., the courthouse, where substantial additions and alterations have been made to the courthouse within the twenty-year period prior to filing a petition for a change of location of the county seat. In that opinion, it was recognized that the purpose of such a restriction was to prevent the additional burden of erecting new public buildings at the taxpayer's expense.
In light of the purpose of the legislation, it does not appear that s. 138.10, F.S., would preclude expansion of the geographical boundaries of the county seat pursuant to s. 138.12, F.S., but would prevent the construction of a new county courthouse within the expanded area if a new courthouse had been built within the past twenty years.[4]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] The opinion cited an unreported judicial decision, Coxet al. v. Board of County Commissioners of Collier County, Chancery No. 1114, decided November 12, 1959, wherein the Circuit Court of Collier County held valid the results of an election pursuant to Ch. 138, F.S., in which the unincorporated area of East Naples was chosen as the new county seat of Collier County.
[2] CF., 20 C.J.S. Counties, s. 45, pp. 240-241 (county seat is not necessarily coextensive with the town in which it is located, such that the extension of a city so as to include another city where the county seat is located does not operate to remove the seat of government or to change the boundaries of the county seat).
[3] See, Collier v. Cassady, 57 So. 617, 618 (Fla. 1912)
[4] Cf., County of Volusia v. State, 417 So.2d 968,970 (Fla. 1982) (county could expand geographical area of the county seat without expanding the boundaries of the municipality named as the county seat to include a location for the new county jail.